KRAGER v. PIERCE.

1. **Contract:** FORCED RESCISSION: CHECK SNATCHED BY MAKER FROM
   HANDS OF PAYEE. Defendant made and delivered to plaintiff his
   bank check for the price of certain land, for which he at the time
   received a deed of warranty from plaintiff. The check and deed were
   delivered without any parol conditions whatever. But defendant soon
   afterwards learned that plaintiff's title to the land was not good, and
   he surreptitiously obtained possession of the check, and handed plaintiff
   the deed, which she kept for a short time and then returned. There
   was no evidence to establish a voluntary rescission of the contract on
   her part. *Held* that the check was the absolute property of plaintiff,
   and that she was entitled to recover its value in an action against
   defendant.

2. **Cross-Examination:** CONVERSATION NOT REFERRED TO IN CHIEF.
   Where a witness is examined as to certain conversations material to
   the issue, it is not allowable in cross-examination to inquire as to another
   conversation not referred to in chief, though between the same parties
   and upon the same subject.

*Appeal from Woodbury District Court*—HON. G. W.
WAKEFIELD, Judge.

SATURDAY, DECEMBER 10.

THIS is an action at law by which the plaintiff seeks to
recover the value of a bank check which she alleges the
defendant unlawfully obtained from her, and converted to
his own use. There was a trial by jury, and a verdict and
judgment for the plaintiff. Defendant appeals.

*Swan & Pardoe*, for appellant.

*S. F. Lynn* and *J. N. Weaver*, for appellee.

ROTHROCK, J.— The undisputed facts of the case are as follows:

On the 2d day of June, 1886, the plaintiff was the owner of a tract of land of about six acres, situated a short distance from Sioux City. The defendant was president of the Sioux City & Des Moines Railroad Company, a corporation which was then engaged in procuring the right of way and grading a railroad, which was surveyed through the plaintiff's land. The Chicago, Milwaukee & St. Paul Railroad Company were also engaged in procuring the right of way and building a road on or near the same line. There was a rivalry between the two companies as to acquiring the right of way, as both desired to occupy substantially the same line. Some time in May, 1886, the Chicago, Milwaukee & St. Paul Company instituted proceedings under the statute, and condemned a right of way across the plaintiff's land. The proceedings did not describe the line of road by giving the points where it entered the land, and the course and distance through it. The whole tract was described, and the line was designated as a strip 100 feet wide through the land; being 50 feet on each side of the center line of the railway, as then located across the land.

*1. CONTRACT: forced rescission: check snatched by maker from hands of payee.*

The defendant, Pierce, was president of the Sioux City & Des Moines Railroad Company, and was actively engaged in its interest. On the 2d day of June he went to the plaintiff's residence on the land, with a right of way deed to his company, with covenants of general warranty, prepared for the plaintiff's signature and acknowledgment. This deed described the right of way in the same manner as the proceedings condemning the land, except the name of the grantee. It was a grant of the right of way over the land of a strip of 100 feet in width, being 50 feet on each side of the center

line of the Sioux City & Des Moines Railroad, as the same was then located over and across the land. The plaintiff executed and acknowledged the deed, and delivered it to the defendant, for the agreed price of $500; and, instead of paying the plaintiff in currency, he drew his personal check for the amount upon the Sioux National Bank, of Sioux City, payable to the plaintiff, and delivered it to her. The defendant returned to Sioux City. On the same day, and before the close of banking hours, the plaintiff and her daughter went to the bank and presented the check for payment. She was advised by an officer of the bank that it would be necessary for her to sign her name on the back of the check. She was provided with a pen and ink, and just as she was about to sign it the defendant came in the room, and walked up behind the plaintiff, and reached over her shoulder, and took the check. He did not speak to the plaintiff until after he had the check in his possession, and he then told her he wanted her to go with him to an attorney's office. She complied with this request, and at the attorney's office she was advised that she had no title to the land which she had conveyed for the right of way. The deed was redelivered to her. It does not appear that she agreed to rescind the contract. She said but little, if anything, but took the deed, and went home. Within a day or two thereafter she sent the deed back to the attorney, and left it with some one in his office. It was allowed to lie on the table in the office until this suit was commenced, when it was taken charge of by the attorney. There is no question but that the defendant had funds in the bank, and the amount of the check would have been paid to the plaintiff if the defendant had not obtained possession of it.

Pierce did not know, when the deed was delivered to him, where the located line of the Chicago, Milwaukee & St. Paul r' ad was, nor that said company had condemned the right of way. He stated as a witness on the trial that he did not think that the line of his own road had been permanently

located through the land at that time. But it was a fact that the condemned land covered part of the land upon which the Sioux City & Des Moines Company desired to construct their road, so that the two strips of 100 feet width would overlap each other about 50 feet, which would leave but 50 feet of right of way for defendant's road.

The defendant averred in his answer, in substance, that the check was not delivered to the plaintiff as payment, but before payment thereof, and, before the acceptance of the deed, it was agreed that the title to the property conveyed should be investigated. This averment is not sustained by the evidence. On the contrary, the preponderance of the evidence is to the effect that the deed and check were delivered without any parol conditions whatever. It seems to us, therefore, that it is very plain that when the check was delivered it was the absolute property of the plaintiff, and she could not be divested of her right to the same without her consent, except by some legal proceeding to rescind the contract, and stop the payment of the check.

I. The principal question discussed by counsel for appellant is that the jury disregarded the instructions of the court. The instructions are to the effect that, if the plaintiff accepted the return of the deed, and acquiesced in the defendant's keeping the check, she is not damaged, and cannot recover. The jury must have found that there was no rescission of the contract, and we are not prepared to say that they were not warranted in so finding. It cannot be said that the manual possession of the check was obtained with consent of the plaintiff. It is true that, after being conducted to the lawyer's office, she took the deed, and carried it home with her. But it might fairly be found that she was at a great disadvantage, to say the least, in what took place after the check had been surreptitiously taken from her, and then she returned the deed with reasonable promptness; and we may say in conclusion, on this point, that we are impressed with the thought that the methods adopted to

procure a rescission of this contract are not such as to induce either the court or jury to find that it was all done with the consent of the plaintiff.

II. The plaintiff and her daughter were examined as witnesses in chief, as to what occurred in the bank, and at

<span style="font-variant:small-caps">2. cross-examination: conversation not referred to in chief.</span> their house, when the deed and check were delivered. The defendant insisted on cross-examining them as to what occurred in the lawyer's office. The court, on the objection of the plaintiff, refused to permit this cross-examination. This ruling is claimed to be erroneous. We think it was correct. It appears to us that it was not proper cross-examination. It pertained to a conversation not referred to in the examination in chief.

We have disposed of all the questions which we regard as material in the case, and reach the conclusion that the judgment ought to be

AFFIRMED.